Paul Garry GIBBAR and Kenneth Lee Gibbar, Trustees of Paul-Viola Gibbar Trust, Plaintiffs-Appellees,

v.

CALVERT FIRE INSURANCE COMPANY, Defendant-Appellant.

No. 77–302C(B).

United States District Court,
E. D. Missouri, E. D.

May 18, 1979.

Milton I. Goldstein, Goldstein & Price, St. Louis, Mo., for plaintiffs-appellees.

Michael D. O'Keefe, Thompson & Mitchell, St. Louis, Mo., for defendant-appellant.

FINDINGS OF FACT
and
CONCLUSIONS OF LAW

REGAN, District Judge.

This is an action by plaintiffs, Paul Garry Gibbar and Kenneth Lee Gibbar, Trustees of Paul-Viola Gibbar Trust, as owners of the river towboat M/V LINDA, now known as M/V G–TEN, to recover damages under an insurance policy issued by defendant Calvert Fire Insurance Company. The loss occurred while the vessel was navigating on the Mississippi River when the starboard main engine ran at excessive speed, causing damage to the engine and its component parts.

The parties have stipulated to a number of pertinent facts, including the reasonableness of the cost of repairing the accident damage, in the amount of $44,222.70. The case was tried to the Court sitting without a jury.

## Findings of Fact

1. Plaintiffs are trustees of the Paul-Viola Gibbar Trust and, as trustees, are the owners of the M/V LINDA, now known as the M/V G–TEN (hereinafter referred to as "the vessel"), a river type towboat powered by two General Motors diesel engines. Plaintiffs purchased the vessel after it had been damaged by fire.

2. Defendant Calvert Fire Insurance Company is an insurance company organized and existing under law, which was qualified to do business in the State of Missouri.

3. On or about May 14, 1976, defendant, in consideration of an agreed premium in the amount of $1312.50, which was duly paid, issued its Hull and Machinery Insurance Policy No. CAH–8903 (hereafter referred to as "the policy"), insuring plaintiffs against loss of, or damage to, the vessel, which was valued at, and insured for, $75,-000.00, subject to a deductible of $2500.00. The policy period extended from May 14, 1977 to May 14, 1978. The Court finds that the insurance policy was in effect at the time of the casualty hereinafter mentioned.

4. The policy (Plaintiffs' Exhibit 1), written on the Taylor 1953 (Rev. 70) Form, provided insurance coverage, not only for the common marine and other perils (Policy, lines 15–17) but also contained an Inchmaree Clause furnishing coverage against loss or damage to the vessel caused by breakdown of motor generators, latent defects in machinery or hull (excluding the cost of repairing the defective part) and negligence of masters, mariners, engineers or pilots and other enumerated causes, provided the loss or damage did not result from want of due diligence by the assured (Policy, lines 20–33).

5. The policy prohibited operation of the vessel and provided that it should be laid up at the facility of an assured (Plaintiffs' Exhibit 1, Port Risk Endorsement). Permission was granted the assured to make repairs to the vessel (Endorsement No. 2, "Special Conditions", par. 6).

6. Extensive repairs and improvements were made to the vessel and, in August 1976, defendant was requested to insure it on an operational basis at an increased value. The Court finds that the repairs and improvements were performed in a workmanlike manner.

7. Before expanding the insurance coverage on the vessel, defendant required that a Condition and Value Survey be submitted. On or about August 17, 1976, such a survey was made by J. Stuart Corsa, an independent marine surveyor of Merrill Marine Service, Inc. and forwarded to defendant. (Plaintiffs' Exhibit 2).

8. Defendant, in consideration of an additional premium the parties agreed upon, insured the vessel on an operation basis under the policy, effective September 1, 1976; and the amount for which the vessel was valued at, and insured for, was increased to $350,000.00, subject to a deductible of $2500.00. (Plaintiffs' Exhibit 1, Endorsement No. 4).

9. Plaintiffs tested and operated the vessel, on or about September 1, 1976 and prior to the date of the casualty and the vessel and its engines performed without mishap. The Court finds that plaintiffs used due diligence in testing and checking the suitability of the vessel's machinery for operation and that the vessel was seaworthy when it became covered for operational risks under the policy.

10. On September 6, 1976, the vessel was operated on a voyage extending south on the Mississippi River from Chester, Illinois. During the first hour the vessel and all systems functioned in good order. Thereafter, the starboard engine ran at excessive speed when two fuel injectors stuck, and serious damage resulted to the vessel, its engines and its other component parts.

11. The Court finds that the loss or damage did not result from want of due diligence by plaintiffs, the owners or managers of the vessel, and that they did not, from bad faith or neglect knowingly permit the vessel to start on the voyage in an unseaworthy condition.

12. Defendant had a damage survey made by Ralph F. Clark of Marine Loss Control, Inc. The cost of repairing the accident damages was $44,222.70 (excluding the cost and expense of repairing the two stuck fuel injectors), which the Court finds was reasonable.

13. Plaintiffs duly filed a claim for the loss in the amount of $41,722.70, representing the amount of the loss, less the deductible of $2,500.00.

14. Defendant refused to pay the claim on the ground the vessel was unseaworthy because two fuel injectors stuck; and that the loss was, therefore, not covered under the policy.

### Conclusions of Law

1. Any of the foregoing findings of fact which may more properly be considered conclusions of law.

2. The Court has jurisdiction of the parties and the subject matter of the controversy is within its admiralty and maritime jurisdiction, pursuant to 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure.

3. The defendant here had the burden of proving its contention that the failure of fuel injectors numbers 7 and 15 of the starboard engine of the M/V LINDA was not due to a latent defect and defendant has failed to sustain such burden.

4. The failure of fuel injectors numbers 7 and 15 of the starboard engine of the M/V LINDA under the circumstances of this case constitutes a breakdown of motor generators or other electrical machinery and electrical connections thereto, bursting of boilers, or breakage of shafts, or a latent defect in the machinery or hull which was a risk or peril insured against under the INCHMAREE Clause of the policy here involved and, therefore, the plaintiffs are entitled to recover for the value of the damage to the M/V LINDA under such clause for such failure.

5. Defendant has not satisfied its burden of proving that, when the insurance attached, the vessel was unseaworthy and that such unseaworthiness was the proximate cause of the accident; nor has defendant proved that plaintiffs personally are chargeable with fault in sending an unseaworthy vessel out on a voyage on September 6, 1976.

6. The Court finds that the loss in the accident in this case was covered by the insurance policy issued by defendant, and that the reasonable cost of repairing the accident is in the sum of $44,222.70.

7. The Court finds that the refusal by defendant insurance company to pay the claim was not without reasonable cause or excuse within the meaning of Section 375.-420, Missouri Revised Statutes, as amended. Therefore, there will be no allowance for attorneys' fees or for vexatious refusal to pay.

8. Plaintiffs are also entitled to recover for interest computed at 6 per cent from the date expenditures were actually made.

9. The Court further finds that plaintiffs are entitled to judgment against defendant for their loss in the sum of $41,-722.70 ($44,222.70 less the deductible of $2,500.00), together with prejudgment interest at the rate of 6 per cent per annum on $41,722.70 from the date such expenditures were made, together with interest from date of judgment, plus the cost and expenses of this proceeding.